The opinion of the court was delivered by
Gtbson, J.
This act of limitation is to be construed according to the real intention of the legislature, at the time it was made; and we are enabled to ascertain this in some measure, by a recurrence to other acts of assembly. The act of the 26th of March, 1785,' which prescribes a limitation to actions brought to recover possession of land, has a proviso nearly in the words of the act under consideration. This, proviso is repealed by the act of 11th March, 1815, so far as it relates to persons “ beyond the seas, and from, and without the United States of America;” which clearly shows the understanding of the legislature on the subject; for if they had supposed any to be included within the proviso, who were out of the state, and not out of the United States, the repealing clause would have embraced them specially. That, however, was thought to be unnecessary. In the act of the 13th of April, 1791, which limits the time of bringing writs of error, the proviso is in favour of those who shall be “ out of the limits of the United States;” which must be understood to be intended as equivalent in meaning to the words “beyond sea.” In 1713, when the act under consideration was passed, there was no confederation of the states, and there was, therefore, no apt and definite term to express absence from the British possessions in America, and this I take to be the reason why the term “ beyond sea,” which means the same thing, was borrowed from the English law. “ By the English law,” says Sir Wm. Blackstone, “ children born in wedlock may, in some instances, be bastards: as if the husband be out of the- *292 kingdom of England, (or as the law somewhat loosely phrases it extra quatuor maria,) for above nine months, so that no access to his wife can be presumed.” Now it is to be noted, that the notion our ancestors attached to being out of the kingdom was, absence beyond the four seas; the narrow seas, whether by right or by wrong, being claimed as a part of the British domain. Extra quatuor maria, was precisely the same meaning as the words beyond sea; and it is, therefore, difficult to discover on what ground the English courts extended the saving in their statutes of limitation to persons in Ireland, unless that country, being a separate kingdom, were considered to be no part of the realm. What effect the union of Great Britain and Ireland may have on the construction of this clause in their act, remains to be seen. When, however, our legislature came to pass the act of 1705, against adultery, instead of using the words, beyond sea, to signify absence from the British American possessions, as the subject required peculiar accuracy of expression, the object being to define a criminal offence, they declare that a married woman having a child born of her body, When the husband “has not been in some of the Queen’s colonies or plantations in this continent, betwixt the eastmost parts of New-England, and the southernmost parts of North Carolina,” within twelve months preceding the birth, shall be punished as an adultress. But in all acts passed after the union of the states, we find the saving extended only to those who are out of the United States. Why then extend the saving to those who are only out of the state ? That, beside being contrary tó the common Acceptation of the phrase, would extend the benefit to a class of persons who are not within the reason of the provision, The intercourse between the states cannot be suspended by hostilities, or impeded by the risques and uncertainly of communication by sea. By the constitution of the United States, the citizens of the union have equal privileges in each particular state, and tribunals are provided expressly for the impartial administration of justice between citizens of different states. The states are held together not only by a common political bond, but their intercourse is facilitated by a similarity of customs, language and laws; and in this respect there is a difference between them and the subjects of foreign governments, which might well be thought to call for a distinction, with respect to the necessity of prosecuting- a right of action. The only thing to fa-vour a contrary construction, is found in the saving clause itself, which allows the statute to begin' to run from the time of the party’s “returning into the province,” and hence it is inferred, that the party must necessarily have been within the saving, while he was barely out of the province. But it is plain from the context, that by returning into the province, the legislature meant returning from beyond sea, or to speak more accurately, into the British possessions in America.
*293 The point, however, has already been decided by this court, on due consideration; and unless, therefore, it were palpably wrong, we would not be justified in departing from thát precedent. With respect to the case of Murray v. Baker, 3 Wheaton, 541, decided by the Supreme Court of the United States, I can only say, that all the decisions of that court are entitled to great respect; but unless in cases where it has appellate jurisdiction, and may revise and correct the decisions of the state courts, its opinions are not conclusive; and however proper its decision may have been with respect to the statute, on which it was called to put a construction, it can furnish no satisfactory guide to us in the construction of our own acts of assembly.
Beside the general principle involved by the demurrer, there is an objection to the plea, which this decision of the general question would render it unnecessary to consider. The plea merely states, that the plaintiff was resident out of the state, without specially denying that he had been in the state within the period material to the question; and we are all of opinion, that even if absence from the state were sufficient to satisfy the saving clause, still the want of this negative averment would render the plea faulty. There is no clearer rule of pleading, than that a party who wishes to bring himself within the benefit of an exception, must expressly aver every fact and circumstance necessary to do so, whether it be negative or positive. A party whose right of action is protected by his absence, loses his protection the instant he sets his foot within the prescribed limits; for from that time, the statute begins to run. The defendant must have judgment.
Judgment for defendant.